# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **KNOX ENERGY, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00046 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **GASCO DRILLING, INC.,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*J. Scott Sexton, H. David Gibson, Michael J. Finney, and Abigail E. Murchison, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Plaintiff and Counterclaim Defendants; Thomas R. Scott, Jr., Benjamin A. Street, and Jason D. Gallagher, Street Law Firm, LLP, Grundy, Virginia, for Defendant and Counterclaim Plaintiff.*

In this breach of contract action arising under Virginia law, the party alleged to have breached the contract moved at trial for judgment as a matter of law.  The parties argued their positions and I announced my intention to grant the oral motion and then discharged the jury.  This opinion sets forth my basis for granting the motion.  In summary, I find that there was insufficient proof of mutual assent to the contract sued upon and thus it is unenforceable as a matter of law.

I.

Knox Energy, LLC, a natural gas producer, filed this action seeking a declaratory judgment that no contractual relationship existed between it and Gasco Drilling, Inc. ("Gasco"), a gas drilling company.[1]   Gasco in turn filed a Counterclaim against both Knox Energy, LLC, and an additional party, Consol Energy, Inc.[2]   In its Counterclaim, Gasco sought recovery of over $14 million under an expired drilling contract that Gasco claimed had been resurrected by a form agreement mistakenly sent to Gasco.  Without objection, I ruled prior to trial that Gasco would be treated as a plaintiff and had the burden of proof as to the existence of an enforceable contract.

The essential facts of this case are largely uncontested.  Gasco presented its case-in-chief at trial through the testimony of three witnesses:  Clyde B. Ratliff ("Ratliff"), Gasco's CEO and principal owner; Freda Rasnake ("Rasnake"), Ratliff's clerical assistant; and Todd M. Shumaker ("Shumaker"), Knox/Consol's

---

[1]   Jurisdiction of this court is based upon diversity of citizenship and amount in controversy.  28 U.S.C. § 1332(a).

[2]  Knox Energy, LLC, and Consol Energy, Inc., are affiliated companies.  For the purposes of this case, the parties have not distinguished between these two entities.  I will reference them jointly as "Knox/Consol" in this opinion.   The parties stipulated prior to trial that Consol had actual authority to enter into drilling contracts on behalf of Knox during the relevant time period (ECF No. 123), although there was no stipulation that Consol was liable for contracts made by Knox.   In any event, there has been no contention that Consol and Knox are to be treated differently in this case.   In fact, counsel for Knox/Consol told the jury in opening statements that Knox, CNX (another affiliate) and Consol are "all . . . the same company."   (Trial Tr. 76, Sept. 15, 2014, ECF No. 281.)

Director of Contract Services.  The testimony of Gasco's three witnesses and the exhibits admitted during that testimony are the basis for the court granting Knox/Consol's motion for judgment as a matter of law.

Gasco is a family owned and operated gas drilling company that has been in business since the late 1980s.  Gasco has had business dealings with Knox/Consol, a natural gas producer, since the early 1990s.  During this period, the parties have entered into numerous contracts for the drilling of gas wells.

Ratliff, Gasco's CEO, exercises exclusive control over the execution of drilling contracts entered by Gasco.  In contrast, no single individual exercises exclusive contracting authority for Knox/Consol.  Ratliff has negotiated drilling contracts with various individuals exercising contracting authority on behalf of Knox/Consol during the course of the parties' relationship.

The first critical event occurred in June 2008 when the parties entered into a written contract for well drilling services to begin on July 7, 2008 ("2008 Drilling Contract").  The term of the 2008 Drilling Contract was stated to be "until drilling operations are completed . . . , or for a term of 2 years."  (Countercl. Pl.'s Trial Ex. 1 § 6.1, ECF No. 264-2.)

Pursuant to the 2008 Drilling Contract, Gasco was hired to provide drilling services at undefined sites throughout eastern Tennessee, eastern Kentucky, and, at times, in Virginia and northern West Virginia.  Gasco was also obligated to have

two drilling rigs and associated equipment available for use during the term of the 2008 Drilling Contract.

In compensation for providing drilling services, Knox/Consol was required to pay Gasco for each drilling rig at work on horizontal gas drilling, either $13,500 or $12,000 per day, depending upon whether the drilling was performed with or without pipe. In addition, Knox/Consol had to pay Gasco a per-foot fee during vertical drilling, prior to the horizontal drilling work.[3]

Central to Gasco's claim, it was also entitled to a standby rate of $10,800 per day for each drilling rig at all times when drilling was not being performed. This standby rate was unique in that it was in the form of a "take or pay" provision, entitling Gasco to a minimum of 328 days of compensation per year. In short, Gasco was guaranteed 328 days of compensation at a minimum daily rate of $10,800 for each of two drilling rigs even if no drilling rig was in service.

The "take or pay" provision of the 2008 Drilling Contract was included in the contract at Knox/Consol's request. At the time, natural gas was at market highs, and the "take or pay" provision ensured that two of Gasco's drilling rigs would be available for use on Knox/Consol's well sites. This provision was so unique that, according to Gasco's CEO Ratliff, Gasco had only entered into two

---

[3] As explained at trial, the drilling involved so-called "fracking," whereby a well is first driven vertically and then turned horizontally to inject liquid into the gas-bearing formation, inducing fractures in the rock and allowing the gas to flow up the wellbore.

drilling contracts with "take or pay" provisions in the company's history, both of which were signed in 2008.

Following its execution, the parties amended the 2008 Drilling Contract three times following significant drops in the market price of natural gas. On February 17, 2009, the parties agreed to reduce the standby rate under the "take or pay" provision to $6,800 per day. The reduced rate was to remain in effect until Gasco was instructed by Knox/Consol to recommence drilling operations, at which time, the standby rate would revert to $10,800 per day. Following this amendment, Gasco recommenced drilling operations for Knox/Consol; however, as an apparent oversight, Gasco never again billed for standby time at a rate of $10,800 per day.

On May 1, 2009, the parties amended the 2008 Drilling Contract again to reduce the compensation rates for Gasco's drilling services. Specifically, the daily drilling rates for drilling with and without pipe were reduced to $12,500 and $11,500, respectively. The vertical footage drilling rate under the contract was also reduced from $22.50 to $20.50 per foot.

The parties' final amendment to the 2008 Drilling Contract was effective May 10, 2010. Pursuant to this amendment, the parties identified two drilling rigs that were actively drilling wells for Knox/Consol in Tennessee, and agreed to release one drilling rig upon completion of an identified well. After completion of the identified well, the parties agreed that Knox/Consol would no longer be

obligated under the 2008 Drilling Contract for the released drilling rig.  The parties also agreed that the unreleased drilling rig would continue drilling operations on five identified wells.  The May 10, 2010, amendment represented the final scope of drilling work performed under the 2008 Drilling Contract.[4]  Drilling operations were completed and the 2008 Drilling Contract terminated according to its terms on July 24, 2010.

On June 6, 2011, well after work under the 2008 Drilling Contract terminated, a temporary clerical employee of Knox/Consol emailed Rasnake a one-page form document entitled "Addendum to Contract Purchase Order" (hereafter called the "Addendum"), which Gasco dated, signed and returned on June 14, 2011.  Knox/Consol signed the Addendum and returned a copy to Gasco in July 2011.  The Addendum and the events surrounding its execution were the primary issues addressed at trial.

The fully executed Addendum contains the following language:

### Addendum to Contract Purchase Order

This Addendum to contract purchase order ("Addendum") is entered into effective this 13th day of June, 2011, by and between Consol Energy, Inc. and its affiliates ("Company") and Gasco Drilling, Inc. ("Contractor").

---

[4]   Prior to trial, relying upon the May 10, 2010 amendment, I ruled that Gasco's potential recovery was limited to standby charges associated with only one drilling rig. *Knox Energy, LLC v. Gasco Drilling, Inc.*, No. 1:12CV00046, ECF No. 236 (W.D. Va. Sept. 4, 2014).

Whereas, Company and Contractor are parties to a contract purchase order (PO No. 5600000439) (the "Contract Purchase Order"); and

Whereas, Company and Contractor agree to modify the "Term" provision of the Contract Purchase Order as provided herein.

Therefore, intending to be legally bound, Company and Contractor agree as follows.

1.  Company and Contractor agree to modify the "Term" provision of the Contract Purchase Order to read as follows:

    **Term:**

    Subject to Company's right to cancel this contract purchase order as set forth below, the term of this agreement shall be for one year from the date set forth above and shall be automatically extended for one year terms unless either party gives written notice to the other party of the termination of the agreement at least thirty (30) days before the end of the current one year term.

2.  Except for the modification of the "Term" provision as set forth in paragraph 1 of this Addendum, all other provisions of the Contract Purchase Order shall remain in full force and effect.

In witness whereof, the parties have caused their duly authorized representatives to execute this agreement intending it to be effective on the effective date.

(Countercl. Pl.'s Trial Ex. 11(b), ECF No. 264-25.)

I determined prior to trial, in response to Knox/Consol's Motion for

Judgment on the Pleadings to the Counterclaim of Gasco, that the language of the

Addendum was ambiguous as to whether it reinstated the 2008 Drilling Contract as

of June 13, 2011, the effective date of the Addendum, or provided for a one-year renewable term as of July 7, 2008, the effective date of the 2008 Drilling Contract. *Knox Energy, LLC v. Gasco Drilling, Inc.*, No. 1:12CV00046, 2014 WL 2468434, at *3 (W.D. Va. June 2, 2014).   Under the latter interpretation advocated by Knox/Consol, the alleged contract created by the Addendum "could never have existed and is a nullity." *See id.* at *2.   I held, however, that the Addendum contained a latent ambiguity regarding this issue that permitted the use of extrinsic evidence to determine the parties' intent. *Id.*

At trial, the parties presented extensive extrinsic evidence regarding the events that preceded and followed the execution of the Addendum, including the admission of numerous communications and documents that accompanied the Addendum.   The parties are largely in agreement regarding these events and communications associated with the Addendum, but continue to dispute whether the Addendum reinstated the 2008 Drilling Contract.

Specifically, on June 6, 2011, Gasco received two documents from Knox/Consol.  The first document was received by mail and was entitled "Terms & Conditions Agreement Policy (Contractors)" ("T&C Policy").  (Countercl. Pl.'s Trial Ex. 30, ECF No. 264-26.)  The second document was received as an email attachment and was an unexecuted and incomplete Addendum form, which lacked an effective date, contractor name, and purchase number.

The June 6, 2011 email containing the blank Addendum also contained the following statement in the body of the email:

> Attached is a [sic] Addendum to your current Contract Purchase Order No. 5600000439.  The purpose of the Addendum is to revise the Term of the Contract Purchase Order to have it extend automatically from year to year unless either party gives the other party notice of intent not to extend at least thirty days before the end of the current one year term.
>
> Also because of changes in our SAP system we have to renumber our existing contracts.  Please be advised that the number of your contract has been changed from 4600000856 to 5600000439
>
> Please sign and return the attached addendums [sic] via email within 2 business days.

(Countercl. Pl.'s Trial Ex. 3, ECF No. 264-7.)

In response, Rasnake replied to Knox/Consol's email the same day and requested a copy of contract number "4600000856."  (Countercl. Pl.'s Trial Ex. 4, ECF No. 264-8.)  An identical request was resent by Rasnake on June 8, 2011. That day, Knox/Consol emailed Gasco a copy of the 2008 Drilling Contract and associated documents describing the 2008 Drilling Contract as contract number 4600000856 and 5600000439.  Also attached to Knox/Consol's June 8, 2011, email was a second copy of the unexecuted and incomplete Addendum form and a document entitled "Agreement to Engage in Electronic Commerce" ("Electronic Commerce Agreement").  (Countercl. Pl.'s Trial Ex. 7(d), ECF No. 264-16.)

At the time these communications were exchanged, CEO Ratliff was out of town and did not review the documents until he returned to his office. On June 13, 2011, Ratliff had an in-person meeting with Gasco's attorney, Randy Bolling, regarding the Addendum.[5] On June 14, 2011, Rasnake emailed Knox/Consol the completed and signed Addendum and Electronic Commerce Agreement. The documents Rasnake emailed were both executed by Ratliff in his capacity as Gasco's president. In the body of the accompanying email, Rasnake stated:

> Sorry this has taken a few days to return, Mr. Ratliff has been out of town. You will find attached the signed Addendum to Contract Purchase Order #5600000439 and the Agreement to Engage in Electronic Commerce. Can you please forward your signed copies for our files. Gasco is standing by and ready to perform work under this agreement at Consol's call.

(Countercl. Pl.'s Trial Ex. 8, ECF No. 264-17.)

On July 29, 2011, Knox/Consol emailed Gasco a copy of the fully executed Addendum and Electronic Commerce Agreement that was stamp signed by Shumaker, as "General Manager - Contract & Project Management Consol Energy, Inc." (Countercl. Pl.'s Trial Ex. 11(b), ECF No. 264-25.) Shumaker testified that even though the Addendum had been mistakenly sent to two or three other drilling companies, only Gasco executed and returned the Addendum to Knox/Consol.

---

[5]   Between June 13, 2011, and August 16, 2012, Gasco engaged in fourteen separate communications, including in-person meetings, email exchanges, and telephone conferences, with Gasco's attorney Bolling regarding the Addendum. The specific content of these communications is protected by the attorney-client privilege and was excluded from the evidence at trial.

Prior to receiving the Addendum, Gasco had submitted an unsuccessful bid to secure a drilling contract for Knox/Consol's 2011 well drilling program, but the contract was awarded to one of Gasco's competitors.

In September 2011, after the execution of the Addendum, Gasco submitted another bid to Knox/Consol for a well drilling contract to be performed in the Marcellus Shale region located in West Virginia and southwest Pennsylvania ("Marcellus Bid"). During discussions with Knox/Consol regarding the Marcellus Bid, Gasco did not reference the Addendum or the drilling rigs it asserts were on standby to perform under the 2008 Drilling Contract. However, Gasco did insert a provision in its Marcellus Bid that stated:

> It is understood and agreed by and between the parties that this Contract pertains only to the proposed drilling services to be provided by Contractor in drilling Top holes for the Marcellus Shale in Pennsylvania and West Virginia and nothing contained herein shall in any way alter, amend, change, limit, modify, terminate, replace or supplant any other prior, existing or future contracts as may be entered into by and between Operator and Contractor, all of which other contracts shall be binding and enforceable in accordance with their separate terms and conditions.

(Countercl. Def.'s Trial Ex. 27 § 27, ECF No. 267-28.) Knox/Consol did not accept Gasco's Marcellus Bid.

On January 3, 2012, Chris Ratliff, Gasco's vice president of drilling and son of the CEO, emailed a representative of Knox/Consol regarding its 2012 Drilling Program. Specifically, he stated in his email inquiry: "I wanted to check with you

and see if you are drilling any this year and if so when you plan on bidding it out." (Countercl. Def.'s Trial Ex. 28, ECF No. 267-29.)  Knox/Consol's representative replied that Knox/Consol only had 13 wells to drill in 2012 and the company's Virginia drilling work had been assigned to one of Gasco's competitors.

Without ever having contacted Knox/Consol about work under the purported resurrected 2008 Drilling Contract, in June 2012, Gasco submitted one invoice to Knox/Consol for 328 days of "take or pay" charges accrued between June 13, 2011, and June 12, 2012, for two drilling rigs.  The total invoice amount was $7,084,800.  Contrary to Gasco's invoicing practices under the original term of the 2008 Drilling Contract, Gasco submitted only one invoice during this period rather than submitting invoices monthly for standby charges or immediately after the completion of a well for drilling services.

On August 10, 2012, Knox/Consol filed its action for a declaratory judgment in this court.  Knox/Consol also responded to Gasco's invoice in an August 13, 2012, letter in which it repudiated any claim that the 2008 Drilling Contract had been reinstated by the Addendum.  Knox/Consol also stated that even if a contract did exist Knox/Consol was terminating the contract.

In response to Knox/Consol's actions, Gasco submitted a second invoice to Knox/Consol in October 2010.   The second invoice was for an additional

$7,084,800 representing a claim for Knox/Consol's early termination of the 2008

Drilling Contract for the term of June 13, 2012, to June 12, 2013.

II.

Pursuant to Rule 50 of the Federal Rules of Civil Procedure:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

In considering a motion for judgment as a matter of law, the court must "'not make credibility determinations or weigh the evidence,' as 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 312 (4th Cir. 2010) (unpublished) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (alteration omitted). The court, however, must review the record in a light most favorable to the non-moving party and disregard all evidence favorable to the moving party "'that the jury was not required to believe'" before concluding that the evidence cannot reasonably support a verdict in favor of the non-moving party. *See Super*

*Duper, Inc.,* 382 F. App'x at 312 (unpublished) (quoting *Reeves*, 530 U.S. at 150–51) (alteration omitted); *see also Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998) ("The court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into 'sheer speculation.'") (citation omitted).

For purposes of Knox/Consol's motion, the issue is whether a reasonable jury would have a legally sufficient evidentiary basis to find for Gasco regarding its breach of contract claim.   Under Virginia law,[6] the elements of a breach of contract claim are:  (1) a legally enforceable obligation between the parties; (2) a violation or breach of the obligation; and (3) an injury or harm caused by the breach.   *See Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006).   Gasco has the burden to establish a breach of contract in this proceeding.   *See Shenandoah Milling Co. v. Phosphate Prods. Corp.*, 171 S.E. 681, 684 (Va. 1933) ("The failure of the party claiming damages to prove any one of the three essential elements [of a breach of contract claim] is fatal to his case.").

---

[6]   In a diversity case, I must apply the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).   The 2008 Drilling Contract states that the governing law would be "the state where work is performed" (Countercl. Pl.'s Trial Ex. 1 § 18, ECF No. 264-2), although the work was to be performed in different states.   The parties, however, have contended throughout this case that Virginia law applies and there is no indication that the application of the law of some other state would make a difference in the outcome.

For a legally enforceable contract to exist, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981).  Mutual assent is an objective standard that "'imputes to a person an intention corresponding to the reasonable meaning of his words and acts.'"  *See Lucy v. Zehmer*, 84 S.E.2d 516, 521 (Va. 1954) (quoting *First Nat'l Bank of Roanoke v. Roanoke Oil Co.*, 192 S.E. 764, 770 (Va. 1937)).  If a contracting parties' "words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his mind." *Lucy,* 84 S.E.2d*.* at 522.  Stated differently, a contracting party may not assert another intention "when his conduct and words would warrant a reasonable person in believing that he intended a real agreement." *Id.*  Absent mutual assent by both Knox/Consol and Gasco, Gasco cannot establish a breach of contract.

Whether mutual assent exists requires ascertaining the parties' objective intent, which must be determined from the parties' contract. *See* 4A *Michie's Jurisprudence of Virginia and West Virginia, Contracts* § 45.  Pursuant to Virginia law,

> Where the contract is not clear and unambiguous on its face, but is rendered so by extraneous evidence which has been properly admitted, so that nothing remains to be done except to construe the contract in the light of such extraneous evidence, it is equally the duty of the court and not of the jury to construe it.

*Geoghegan Sons & Co. v. Arbuckle Bros.*, 123 S.E. 387, 389 (Va. 1924).  At trial, the parties presented sufficient extrinsic evidence for this court to construe the parties' intent regarding the Addendum.

III.

It is clear that the Addendum was sent to Gasco as the result of an accounting system error by Knox/Consol.  As testified to by witness Shumaker, Knox/Consol's accounting system required the entry of well drilling contracts, including the 2008 Drilling Contract, in order to issue purchase orders and allow for the payment of drilling invoices.

Knox/Consol's accounting system, however, was not well suited to account for drilling contracts.  As a result, Knox/Consol assigned drilling contracts, including the 2008 Drilling Contract, reference numbers to serve as placeholders in the accounting system to allow for the payment of drilling invoices.

In this case, Knox/Consol entered the 2008 Drilling Contract into its accounting system with an initial reference number of 4600000856 and then renumbered it as 5600000439.  Knox/Consol does not dispute that these reference numbers were frequently used in various purchase orders issued in conjunction with payment under the 2008 Drilling Contract and in communications associated with the Addendum.

The Addendum was inadvertently sent to Gasco during Knox/Consol's process of instituting an "Evergreen" program for thousands of contracts associated with non-bid work for price list contracts.  Knox/Consol distinguishes between what it identifies as "Contract Purchase Orders" for price list contracts and other contracts, like drilling contracts, that are subject to competitive bidding. Knox/Consol asserts this distinction in spite of extensive evidence of its conflated use of the term "Contract Purchase Order" in reference to the 2008 Drilling Contract.

In order to implement the "Evergreen" program for price list contracts, Knox/Consol sought to change the term provision of these contracts so they would renew annually, subject to thirty days notice of termination from either party. According to Shumaker, Knox/Consol sought to change the term provision of price list contracts in order to eliminate an administrative burden associated with individually renewing these contracts on an annual basis.  Shumaker made clear, however, that the "Evergreen" program was never intended to apply to the 2008 Drilling Contract.  Rather, the accounting system inadvertently included the 2008 Drilling Contract in the form addendum solicitations because of its placeholder entry in Knox/Consol's accounting system.

While acknowledging its mistake, Knox/Consol asserts that Gasco should have known that the Addendum did not apply to the 2008 Drilling Contract, but

instead sought to take advantage of the situation by executing the Addendum. Knox/Consol bases this argument on several factors, including Gasco's large number of idle drilling rigs in 2011, the depressed natural gas market, the rarity of "take or pay" provisions in drilling contracts, and Gasco's unsuccessful attempts to obtain Knox/Consol drilling contracts during this period.

In contrast, Gasco's general argument is that it believed the Addendum represented a legitimate request by Knox/Consol to reinstate the 2008 Drilling Contract.  For example, according to Ratliff, he did not believe that there was anything out of the ordinary regarding the Addendum, except that it lacked an effective date.  However, Ratliff also admitted that he did not generally consult with third-parties, like accountants or attorneys, during the process of negotiating drilling contracts, but that in this case he had contacted his attorney many times regarding the Addendum.

Ratliff also testified that he was unaware of Knox/Consol's alleged mistake in soliciting the execution of the Addendum.  Specifically, Ratliff made repeated assertions that he believed Knox/Consol's contracting practices had changed significantly in the years prior to the execution of the Addendum.  In one instance, Ratliff described a meeting in late 2008 or early 2009 when a Knox/Consol representative informed Gasco that all contracting would go through a "supply chain" in the future.  (Trial Tr. 45, Sept. 16, 2014, ECF No. 279.)  At trial, Gasco

also produced communications sent by Knox/Consol in 2009 that described numerous changes to relationships with "suppliers" that would require the use of an online procurement system.  (Countercl. Pl.'s Trial Ex. 40, ECF No. 267-12.)  In short, Gasco asserted that it did not view the Addendum as unusual in the context of what it interpreted as Knox/Consol's more centralized approach to contract management.

Similarly, Gasco produced significant evidence at trial showing that Knox/Consol had frequently referred to the 2008 Drilling Contract as a "Contract Purchase Order" and by the "4600000856" reference number in purchase orders prior to the execution of the Addendum in 2011.  (*See, e.g.*, Countercl. Pl.'s Trial Ex. 24, ECF No. 264-27.)   As a result, Gasco asserts that it did not find it unusual that Knox/Consol would reference the 2008 Drilling Contract as a "Contract Purchase Order" or by the 4600000856 and 5600000439 reference numbers in the Addendum because of Knox/Consol's use of these terms and identifiers in prior communications.

Ratliff also testified that he was under the impression that the contractor who was providing drilling services for Knox/Consol's 2011 drilling program was experiencing performance issues prior to the execution of the Addendum.  According to Ratliff, this gave him the impression that Knox/Consol was

potentially seeking the Addendum in order to replace the other contractor for its 2011 drilling program.

In sum, Gasco argued at trial that under these circumstances it did not view the execution of the Addendum as an unusual event. In support of this position, Gasco focused on Knox/Consol's potential need for Gasco's drilling services in 2011; the alleged centralization of Knox/Consol's contracting practices in the years prior to the execution of the Addendum; and Knox/Consol's pre-Addendum communications that referenced the 2008 Drilling Contract with the same terms and identifiers used in the Addendum. Based on this evidence and testimony, Gasco asserted that it believed Knox/Consol intended to reinstate the 2008 Drilling Contract through the Addendum.

For purposes of Knox/Consol's motion for judgment as a matter of law, both parties' respective interpretations of the other party's alleged intentions are not determinative. Rather, the issue currently before this court is a matter of contract interpretation based on the language of the Addendum and the extrinsic evidence presented at trial. This evidence does not establish that mutual assent, as defined under Virginia law, existed as to the alleged contract.

For mutual assent to exist, "the words and acts of a party, *reasonably interpreted*, [must] manifest an intention to agree." 4A Michie's Jurisprudence of Virginia and West Virginia, *Contracts* § 26 (emphasis added). "In determining

-20-

whether there was mutual assent to be bound, a court first must examine the language of the agreement itself." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 579 (E.D. Va. 2013). In this case, the Addendum does not establish mutual assent to reinstate the 2008 Drilling Contract.

The sole purpose of the Addendum according to its plain language is to "modify" or replace the "Term" provision of the cross-referenced "Contract Purchase Order," which is identified as the parties' 2008 Drilling Contract. (Countercl. Pl.'s Trial Ex. 11(b), ECF No. 264-25.) The "Term" modification required by the Addendum requires one year extensions "from the date set forth above," absent thirty days notice prior to the end of the "current one year term." (*Id.*) The Addendum specifically states that all other provisions of the modified contract "shall remain in full force and effect." (*Id.*) Standing alone, the Addendum is ambiguous regarding whether it reinstates the 2008 Drilling Contract as of the effective date of the Addendum or extends the effective date of the previously completed 2008 Drilling Contract.

Ambiguity in the Addendum requires consideration of extrinsic evidence to determine whether the parties mutually assented to the reinstatement of the 2008 Drilling Contract. The June 6, 2011 email from Knox/Consol addressing the Addendum states that the Addendum is applicable to "your current Contract Purchase Order No. 5600000439." (Countercl. Pl.'s Trial Ex. 3, ECF No. 264-7.)

Knox/Consol's use of "current" indicates that the Addendum is intended to apply to existing or outstanding contracts, not completed or terminated contracts. *See Merriam Webster's Collegiate Dictionary* 284 (10th ed. 1996) (defining "current," in part, as "occurring in or existing at the present time").

In addition, the June 6, 2011, email states that "[t]he purpose of the Addendum is to revise the Term of the Contract Purchase Order to have it extend automatically from year to year." (Countercl. Pl.'s Trial Ex. 3, ECF No. 264-7.) This statement clarifies and reiterates that the "Term" provision in the Addendum, including the paragraph with the reference to the "date set forth above" language, is intended to apply to the term provision of the referenced "Contract Purchase Order" and not to a new term allegedly created on the effective date of the Addendum. It is also evidence that the Addendum's purpose was not to reinstate an expired contract, but only for the limited purpose of automatically extending the term of the referenced "Contract Purchase Order" on a yearly basis. (*Id.*)

Knox/Consol's intent is also demonstrated by the subject line of the June 6, 2011 email that references "Gasco Drilling; Changes to Terms and Conditions Contract." (*Id.*)   Standing alone, Knox/Consol's reference to a terms and conditions contract is meaningless. On June 6, 2011, however, Gasco received a T&C Policy from Knox/Consol by mail. In this document, Knox/Consol states that "Terms & Conditions Agreements apply only to non-bid work generally

-22-

performed as time and material jobs." (Countercl. Pl.'s Trial Ex. 30, at 3, ECF No. 264-26.)  Similarly, it states that "Terms and Conditions Agreements can be used for routine, regularly occurring services.  Terms and Conditions Agreements cannot be used for any services or projects that have been competitively bid by the Site Supervisor and Contract Sourcing Specialist." (*Id.*, at 4, ECF No. 264-26.) When the T&C Policy is read in conjunction with the June 6, 2011, email and Addendum, it is evident that the documents are not intended to apply to competitively bid contracts, like those for drilling services, in spite of Knox/Consol's reference to the parties' 2008 Drilling Contract.

The Addendum and its accompanying communications are also unique compared to the prior practices of the parties for extending drilling contracts. According to Ratliff, it was not uncommon for Knox/Consol to seek the extension of a drilling contract through a letter agreement.  For example, at trial, Gasco admitted a letter from Knox/Consol that solicited the extension of a drilling contract for one-year through December 31, 2003 ("2003 Extension"). Knox/Consol states in the 2003 Extension:

> We have reviewed the subject contract and are extending the contract rate schedule addressed to Mr. Randall Albert dated December 11, 2000.  The contract extension period is for January 1, 2003 to December 31, 2003.  Any rate increase or adjustment will have to be reviewed and approved by [J. Michael Onifer, Superintendent - Gas Operations ("Onifer")].

If you agree to the above terms and conditions, please sign below and return one original to [Onifer].  If you have any questions, please call.

(Countercl. Pl.'s Trial Ex. 45, ECF No. 267-13.)  The 2003 Extension was signed by Ratliff on behalf of Gasco on January 17, 2003.

Compared to the Addendum, the parties' intent is unambiguous in the 2003 Extension.  The parties identified a specific drilling contract and stated that it was subject to a "Contract Renewal" and an "extension" for a defined one-year term. (*Id.*)  By contrast, the Addendum is alleged to create a perpetual extension, subject only to notice of termination.  It is undisputed, however, that drilling service contracts are unique and competitively bid contracts for a defined purpose and term.

The existence of mutual assent is dependent on an objective intent to agree that corresponds to the reasonable meaning of the parties' words and acts.  *See Lucy*, 84 S.E.2d at 522.  In this case, the Addendum constituted an offer, but its reasonable meaning was ambiguous, requiring consideration of extrinsic evidence to determine Knox/Consol's intent associated with its offer.  Knox/Consol asserts that the Addendum was a mistake and represented an intention to extend non-bid contracts, not drilling contracts like the 2008 Drilling Contract.  By contrast, Gasco asserts that the Addendum sought to reinstate the completed 2008 Drilling

Contract.   Absent context, both parties presented two potentially reasonable meanings for the Addendum.

Where only one reasonable meaning could attach to a party's words and acts, the Supreme Court of Virginia referenced the Restatement of Contracts for guidance.  *See id.*  Specifically, "If the words or other acts of one of the parties have but one reasonable meaning, his undisclosed intention is immaterial except when an unreasonable meaning which he attaches to his manifestations is known to the other party."  *Id.*

The same Restatement provision, however, also addressed a situation in which the parties' manifestations have more than one reasonable meaning.  In that context, the Restatement concluded that "[i]f either party has reason to know that the other will give the manifestations only one of these meanings and in fact the manifestations are so understood, the party conscious of the ambiguity is bound in accordance with that understanding."  Restatement (First) of Contracts § 71 cmt. a. Stated differently, "if the offeree's knowledge of the surrounding circumstances is such that the offeree should also have observed the ambiguity, then it cannot object to the offeror attaching its own meaning to the words, and in that case, if the parties' meanings do not coincide, no contract will exist."  2 Richard A. Lord, *Williston on Contracts* § 6:59 (4th ed.).  Moreover, "It follows that the test of the true meaning of an offer or acceptance is not what the party making it thought it

meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* § 6:58.

In this case, the Addendum, the associated written communications, and the parties' prior dealings would indicate to a reasonable person in Ratliff's position — acting on behalf of Gasco — that Knox/Consol did not intend to reinstate the 2008 Drilling Contract. Gasco may not have known Knox/Consol's specific intent because of the ambiguity associated with its communications, but there is sufficient extrinsic evidence in this case that a reasonable person would have known that the Addendum was not intended to reinstate the 2008 Drilling Contract.

Gasco's awareness of the ambiguity is further supported by the fact that Gasco knew of the depressed economic environment for natural gas production in 2011. Not only had Gasco failed to enter other drilling contracts with Knox/Consol during this period, but the evidence is clear that the majority, if not all, of its drilling rigs were idle at this time. Under these circumstances, a reasonable person would not interpret the Addendum and associated communications as an intentional effort to reinstate a lucrative drilling contract, with an automatic renewal provision. This is particularly true given that "take or pay" provisions could only be economically viable in a market with high natural gas prices that were not present in 2011.

For these reasons, I conclude that Knox/Consol is entitled to judgment as a matter of law.  Based on the testimony and evidence presented at trial, a reasonable jury would not have a legally sufficient evidentiary basis to find for Gasco regarding the issue of mutual assent in this case.  Absent mutual assent, Gasco cannot establish a claim for breach of contract.

IV.

For the foregoing reasons, it is **ORDERED** that Knox/Consol's oral motion for judgment as a matter of law is GRANTED.  A separate final judgment in favor of Knox/Consol will be entered forthwith.[7]

ENTER:  October 16, 2014

/s/  James P. Jones
United States District Judge

---

[7] Final judgment will be granted in favor of Knox/Consol on Gasco's Counterclaim.  In view of my determination that the alleged contract is not enforceable, it is not necessary to rule on the declaratory or other equitable relief sought by Knox Energy, LLC, in its Amended Complaint.